MICHAEL KAPLAN, PLAINTIFF IN ERROR, v. NIAGARA FIRE INSURANCE COMPANY, DEFENDANT IN ERROR.

Argued March 16, 1906—Decided November 19, 1906.

1. The court will presume, after an award is made, that the appointment by the arbitrators of an umpire has been rightly done, unless the contrary is shown; every intendment to substantiate the award will be made.

2. In an action involving the validity of an award of arbitrators in which the umpire has taken no part, his qualifications for his office are immaterial.

3. The omission from the appraisement and award of arbitrators of one of the items in controversy between the parties, within the terms of their submission (no misconduct being imputed to the arbitrators) cannot at law be shown by parol.

4. The award cannot be impeached at law for erroneous judgment of the arbitrators upon facts, except only for their misconduct as expressed in *Ruckman* v. *Ransom*, 6 *Vroom* 570. Even in equity, except in cases of accident or mistake, it is final against such attack unless corruption or misconduct be imputed.

On error to the Supreme Court.

Action of contract by Michael Kaplan against said company to recover loss upon policy of fire insurance. Plea of general issue, with notice setting up an award by appraisers under the terms of the policy. Judgment for amount fixed by the award and plaintiff brings error. Affirmed.

The plaintiff declared in contract upon a policy of fire insurance insuring him against loss by fire on his stock of glass,  *  *  *  paints and certain other personal property; averred its destruction and damage by fire, and defendant's liability to pay his loss, not to exceed a certain sum named in the policy, and that he (plaintiff) had performed all the conditions of the policy on his part to be complied with, but that the defendant had not paid said loss, &c. The defendant pleads the general issue, with a notice attached that it would give in evidence in the trial and insist in bar of

plaintiff's claim upon certain conditions contained in the policy, the most material being a stipulation to the effect that, in the event of disagreement as to the amount of loss, the same should be ascertained by two competent and disinterested appraisers (the insured and this company each selecting one); that the two so chosen should first select an umpire; that they together should then estimate and appraise the loss, stating separately sound value and damage, and failing to agree should submit their differences to the umpire; and that the award in writing of any two should determine the amount of such loss; that after the occurrence of the fire a disagreement arose between the plaintiff and the defendant as to the amount of the loss and damage to be paid by defendant, and that they (the parties) thereupon selected two competent and disinterested appraisers to ascertain the amount of the said loss or damage, the plaintiff and defendant each selecting one of the appraisers, and that the two appraisers so chosen, after selecting an umpire, together estimated and appraised the said loss or damage, stating separately sound value and damage, and agreed that the sound value was $1,200 and that the loss or damage was $451.25, and by an award in writing, made on February 25th, 1902, so determined the amount of such loss, and that the defendant has at all times since the making of the said award been ready and willing to pay the plaintiff the said sum, &c.

At the trial of these issues at the Middlesex Circuit, before Mr. Justice Fort and a jury, the plaintiff having proved in evidence his policy, and the injury by fire of his insured property, and the furnishing by him to the defendant of the proofs of loss required by the policy, rested his case; whereupon the defendant introduced in evidence (without objection by plaintiff) a written agreement purporting to be an "agreement for submission to appraisers," duly signed by the plaintiff and defendant, reading as follows, viz.: "This agreement, made and entered into by and between Michael Kaplan, insured as M. Kaplan, of the first part, and the insurance company or companies, whose name or names are signed hereto, of the second part, each for itself and not jointly, witnesseth

that Aaron Buzzee and Frederick Webster shall appraise and ascertain the sound value of and the loss upon the property damaged and destroyed by the fire of Febraury 5th, 1902, as specified below; *provided,* that the said appraisers shall first select a competent and disinterested umpire, who shall act with them in matters of difference only. The award of any two of them, made in writing, in accordance with this agreement, shall be binding upon both parties to this agreement as to the amount of such loss. It is expressly understood that this agreement and appraisement is for the purpose of ascertaining and fixing the amount of sound value and loss and damage only to the property hereinafter described, and shall not determine, waive or invalidate any other right or rights of either party to this agreement. The property on which the sound value and the loss or damage is to be determined is as follows, to wit:

### "M. KAPLAN.

"On his stock of glass, window fixtures and shades, wall paper, oils, varnishes, turpentines, benzine, gasoline, paints, white lead, and dry colors and brushes. All while contained in the three-story frame building corner of Albany and Neilson streets, and known as 76 Albany street, occupied as dwelling and stores. 80 per cent. co-insurance reduced rate and lighting clauses attached. Other insurance permitted. Attached to and forming part of Policy No. . ... .    .......... , agents. It is further expressly understood and agreed that in determining the sound value and the loss or damage upon the property hereinbefore mentioned, the said appraisers are to make an estimate of the actual cash cost of replacing or repairing the same, or the actual cash value thereof, at and immediately preceding the time of the fire; and in case of depreciation of the property from use, age, condition, location or otherwise, a proper deduction shall be made therefor."

The plaintiff also introduced in evidence the written award, signed by the two appraisers, named in the submission, which,

after reciting the taking and signing by the appraisers of their oaths of office in proper form, and their selection and appointment of a named umpire, "to settle matters of difference that might exist between us by reason of and in compliance with the foregoing agreement and appointment," concludes in the following words, viz.:

"Award.—To the Parties in Interest: We have carefully examined the premises and remains of the property hereinbefore specified, in accordance with the foregoing appointment, and have determined the sound value to be twelve hundred dollars, and the loss and damage to be four hundred and fifty-one dollars and twenty-five cents."

The evidence showed no failure of the appraisers to agree, and no difference of opinion between them. Upon the defendant's motion, at the conclusion of the testimony, the learned trial justice directed the jury to render a verdict for the sum fixed by the award, stating his reasons as follows, viz.: "The plaintiff concedes that if the award in question cannot be attacked here, upon any of the grounds they allege, that their recovery in this action must be so limited. The appointment of appraisers or arbitrators was not by rule of court, but was done in compliance with the condition of the policy of insurance sued upon, and may be considered as a common law arbitration. By the common law the award of the arbitrators is like a judgment. Courts of common law cannot listen to suggestions contradicting the award or impeaching the conduct of the arbitrators. *Barlow* v. *Todd,* 3 *Johns.* (*N. Y.*) 263. Professor Greenleaf states the rule this way: 'In regard to corruption, or other misconduct or mistake, of the arbitrators in making their award, the common law seems not to have permitted these to be shown in bar of an action at law for non-performance of the award, but the remedy must be pursued in equity.' 2 *Greenl. Evid.,* § 78; *Cranston* v. *Kenny,* 9 *Johns.* 212; 2 *Tayl. Ev.,* § 1758; *Story Eq. Jur.* (*12th ed.*), § 1452. In *Barlow* v. *Todd, supra,* Justice Spencer says: 'It is now well settled that at law nothing *dehors* the award invalidating it can be pleaded or given in

evidence to the jury.' The cases are numerous, both in this country and in England, on this proposition. In our own state, without quoting further from other authorities, the question appears to be settled. In Sherron v. Wood, Chief Justice Ewing says: 'The arbitrators are judges chosen by the parties themselves, and their awards are not examinable in a court of law unless the condition is to be made a rule of court, and then only for corruption or gross partiality. Courts of law cannot listen to suggestions contradicting the award or impeaching the conduct of the arbitrators. * * * In an action at law on an award, even the corruption or misconduct of the arbitrator is no defence.' *Sherron* v. *Wood,* 5 *Halst.* 7, 14. In Ruckman v. Ramson, Chief Justice Beasley, speaking for the Court of Errors and Appeals, followed and approved this decision. *Ruckman* v. *Ransom,* 6 *Vroom* 565; *Hoagland* v. *Veghte,* 3 *Zab.* 92. Two contentions are especially pressed upon the court in this case as grounds for taking it out of the rule excluding parol evidence to avoid or contradict a report of arbitrators. *First.* That the appraisers failed to take into account, in appraising, certain glass on the premises. *Second.* That the appraisers made their appraisement and award without giving notice to the parties of the time when or place where they would consider the matter. As to the first point, the only arbitrator sworn testifies that the glass they saw was not injured, and was not therefore considered in estimating the damages. In *Harker* v. *Hough,* 2 *Halst.* 428, on a demurrer to a plea alleging that the arbitrators had 'refused to act upon a claim which was a matter in dispute between the parties,' the court said: 'On demurrer the fact must be presumed as pleaded, and if so, there cannot remain a doubt that the award is a nullity.' The matter upon which the arbitrators had failed to act there was one of several independent matters submitted to them for decision, and upon which they refused to act at all. Here the alleged failure was to take into account one item in the many items in the same matter submitted to the appraisers, and not an independent subject-matter of arbitration. If this error

existed, it would only be a mistake. · It nowhere appears there was a refusal to consider. On the other hand, the only proof is that the appraisers did consider it, and did not award any damage as to it, as no damage existed. In that state of fact, it was, if anything, an error of judgment of the arbitrators, and not reversible in this action. In *Cranston* v. *Kenny, supra,* Justice Spencer says: 'If there had been a plain mistake committed by the arbitrators, the relief lies only in equity.' In *Newland* v. *Douglass,* 2 *Johns.* 62, the court said: 'A suit at law will not lie to· re-examine the merits of an award. A Court of Chancery may correct a palpable mistake or miscalculation made by the arbitrators, or relieve against their partiality or corruption, but there is no such remedy at law in a case of submission not within the statute.' The second contention was passed upon in *Sherron* v. *Wood, supra.* Justice Drake says: 'The fourth plea alleged in bar of the action that the defendant was, by the said arbitrators, denied the privilege of hearing and examining witnesses relative to the matters submitted, and that the said arbitrators heard the said William Sherron, and examined witnesses *ex parte,* in the absence of the defendant and without notice to him, &c. If this be so, it is ground for relief by bill in equity, * * * but it cannot be set up as a defence to an action on the arbitration bond.' And Chief Justice Ewing, in the same case, says: 'Improper conduct in an arbitrator in making the award without hearing the defendant and his witnesses cannot be pleaded in bar to an action on the bond conditioned for the performance of the award, but it is only matter of application to the equitable jurisdiction of the court to set aside the award.' Citing 2 *Chit.* 477. Relief is given by our courts in equity for such misconduct on the part of arbitrators—just such conduct as that, the appraisers having failed to give the parties notice and to hear them. *Thomas* v. *West Jersey Railroad Co.,* 9 *C. E. Gr.* 567. The federal courts seem to hold that even in equity an award by appraisers·such as the one in this case will not be set aside from the mere fact that no notice was given, if the submission

does not in terms require notice. *Continental Insurance Co. v. Garrett,* 125 *Fed. Rep.* 589. A third suggestion was made by plaintiff's counsel, that the umpire chosen was not sworn, nor did he agree to accept. The appraisers agreed. His services were therefore not required. His failure to qualify, therefore, is quite immaterial. The authorities seem to sustain this conclusion. *Joyce Ins.,* § 3240; *Chanders v. American Fire Insurance Co.,* 34 *N. W. Rep.* 390; *Caledonian Insurance Co. v. Traub,* 35 *Atl. Rep.* 15; *American Central Insurance Co. v. Landau,* 17 *Dick. Ch. Rep.* 73. There is no requirement that the appraisers be sworn, and if they are not it will not invalidate the award. See opinion of Vice Chancellor Reed in *Stout v. Phoenix Assurance Co.,* 56 *Atl. Rep.* 691. Under the well-established practice in this and other states in which legal and equitable jurisdiction has not been blended, the award in evidence in this cause cannot be attacked in a suit at law upon any of the grounds so forcibly urged by counsel of the plaintiff. The distinction in this regard between the practice in the several states is clearly pointed out by the court in *Robertson v. Scottish Union and National Insurance Co.,* 68 *Fed. Rep.* 173. One of the cases cited by counsel to the court in this case on this point is *Day v. Hammond,* 57 *N. Y.* 479, but an examination of the concluding paragraph of that opinion, which otherwise sustains counsel, shows that it is expressly stated that the reason for that decision is that in New York the law and equity jurisdiction is blended, and therefore there is no necessity for the separation of the rights of action, as there is in the practice under the common-law states. * * * I have no difficulty with regard to the allegation that there was a failure to take into account the property which was totally destroyed. In the first place, there is not any proof in this case that anything was totally destroyed; but if there were, I should still hold that the subject-matter of the arbitration being the ascertainment of the loss by this fire, even though the arbitrators did not take into account some of the particular subject-matter, but did take into account such matters as were

brought to their attention, that their award, even though wrong, cannot be attacked at law, but must be set aside in equity. The parties must go there for their relief. The award in evidence is conclusive upon the parties in this court, and the plaintiff is entitled to recover only the amount of the award and interest."

For the plaintiff in error, *Charles T. Cowenhoven* and *Alan H. Strong.*

For the defendant in error, *Lindabury, Depue & Faulks.*

The opinion of the court was delivered by

VREDENBURGH, J. The counsel of the plaintiff in error, having before them the light of the above-quoted opinion at the Circuit, fortified by its references to authority, urge in argument and in brief here two subjects deserving our consideration. Their first contention is directed against the validity of the appointment of an umpire. Upon the face of the award in evidence there appears in writing to have been made by the two chosen arbitrators a selection and appointment of a designated person as umpire, precedently to the signing by them of their award. It was made a condition in the submission that the umpire should first be appointed by the two appraisers before they entered upon their own duties, and this the evidence shows they did. Says *Kyd on Awards* (at *p.* 87), this "is the fairest way of choosing an umpire." Nothing has appeared in the case to weaken the legal presumption of validity which the court is bound to ascribe to the proceedings, in the absence of evidence to the contrary. The authorities all hold that "every intendment to substantiate the award will be made." But, assuming, for argument's sake, the correctness of the suggestion in plaintiff's brief to the effect that there is nothing in the case to show that the person named by the arbitrators as the umpire possessed the necessary qualifications for the office, or ever accepted it, it seems too manifest to justify discussion that, since the case

shows he never in fact acted, nor assumed or had jurisdiction to act as such umpire (no subject of difference ever having arisen between the two arbitrators), it can be of no legal consequence whether or not he ever accepted the office, or had any, the slightest, qualification for it. As he never decided any question in the proceedings, and took no part in the making of the award, the plaintiff's rights have not been affected.

The subject presented by the plaintiff's specific assignment of error raises the important question in controversy. It is that the trial justice "refused to permit the plaintiff to prove that there was a total loss under said policy of some $300 in the destruction of window glass, which was entirely omitted in the appraisement, and overruled the testimony offered on the part of said plaintiff for that purpose." The precise point presented here is, admitting the omission from the award of one of the items in dispute between the parties, which was within the terms of the submission, can such omission be proved at law by parol-extrinsic evidence?

It should be observed that the plaintiff's offer does not fall within the exception to the general rule pointed out by Chief Justice Beasley in *Ruckman v. Ransom,* 6 *Vroom* 565, 570. He there adds the great weight of his opinion in expressing both the well-settled general rule and also its one exception, deduced by him from the authorities, as follows: "The general rule, on all sides admitted, is that neither the fraud, misconduct or mistake of the arbitrator can be set up at law in an action on the award, or on the bond of submission, unless such vice or defect appear upon the face of the award or submission. I think, also, it must be considered settled that the generality of this rule is subject to one exception, which is that the award may be contradicted by parol, in order to show that the arbitrators neglected or refused to take into consideration a matter submitted to them." The principal case in this state, out of which this exception took form in the mind of the Chief Justice, evidently was *Harker v. Hough,* 2 *Halst.* 428. In that case it was the *refusal* of the arbitrators to hear or investigate a certain claim set

forth in the plea of the defendant (which he averred was within the submission) that led the Supreme Court to hold the plea good at law. In the case at bar there was no offer to prove the *refusal* of the arbitrators to appraise the omitted item. For all that appears by the offer the alleged omission may have been the result of a pure accident or clerical mistake in the making up of the award. The offer was not to prove a defect or mistake apparent on the face of the award, but, in effect, was to contradict its very terms by the insertion of an additional item in order to increase the amount of damages therein in favor of the plaintiff—in other words, to show an erroneous finding of fact made by the arbitrators.

But the rule quoted is opposed to the admissibility of such offer. The judgment of the arbitrators as to conclusions of fact is final, except as above stated. Their award cannot be impeached at law for erroneous judgment upon facts, nor can it be for the omission of items of account which are within the terms of the submission. Even in equity, except in cases of accident or mistake, such decision is final unless corruption or misconduct be imputed to them.

In *Price* v. *Williams,* 1 *Ves. Jr.* 365, the report of the old case shows that "Mr. Graham—against the award"—ineffectually applied to Lord Chancellor Hardwicke "for time to consider whether affidavits should be produced which could be made by respectable persons, who were ready to swear that the arbitrators did not look into the evidence of *more than five items out of a great number."* The application so refused was entirely analogous to the plaintiff's offer in the case at bar. In *Dick* v. *Milligan,* 2 *Id.* 23, 24, it was held that the decision of the arbitrators is final upon matters of fact (no corruption or misconduct being imputed to them). These views bearing upon the omission in question are supported by the clear weight of authority.

Other decisions pertinent will be found in 2 *Am. & Eng. Encycl. L.* (2d ed.) 776, and it is unnecessary to add them here. The plaintiff also insists that the award did not include the goods destroyed, but we think that, upon its face when read with the submission upon which it is based, it pur-

ports to embrace all the goods specified in the submission, whether destroyed or damaged. It excepts no goods destroyed from the operation of its broad terms, and for reasons already expressed parol evidence cannot be resorted to at law to correct alleged omissions. The plaintiff's exceptions at the trial pointed only to the item of glass, no other "goods" being there specified as claimed to have been destroyed.

The judgment below should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY. DILL. 13.

*For reversal*—None.